Good morning, Your Honors. May I please the Court? My name is Boris Davidovsky. I represent Valentina Fokina in this matter, and at this time I would endeavor to reserve two minutes for rebuttal, please. Your Honors, this case is about the fact that what constitutes a reality. And the unfortunate and tragic reality of Ms. Fokina's situation is that despite any ownership interest in the subject property, the property was unavailable to her as a resource. And her argument on the appeal is threefold. First, she was precluded from converting the property into cash, the property that she left behind in Russia after she fled to the United States as a refugee, by circumstances that were beyond her control. And even if she was not so precluded, the record reflects the fact that her husband would oppose any sale to the property, and therefore that constitutes a sufficient legal bar in disqualifying the property from being counted or considered as a resource. And finally, even if that were not the case, the record reflects that the Administrative Law Judge failed to sufficiently develop the record to support the conclusion that the property that Ms. Fokina would realize an amount over the statutory limit, even if she were to sell the property after considering all of the expenses associated with the property, with the sale, taxes. I have some questions with you on that last point. And my first series of questions, I just realized to my, the record, and I want to make sure I understand the steps that took place here. So as I understand it, when she first applied for SSI benefits, when she, in very, very first application, this piece of property in Russia was not listed. This piece of property was not listed, correct. Right, okay. And then about a year and a half later, after she begins receiving benefits, she has to go through a redetermination. I would say at about four years, correct. At some point along the way, another redetermination takes place. Yes, Your Honor. And apparently the gathering of the information for that determination was done by phone. That is correct. And there's an interview that takes place. Correct. And she's assisted in that interview by her daughter as a translator. She was not. She was assisted indirectly by the Social Security Administration's interpreter, but her daughter was not present at that time. It was a phone conversation. So somebody from the SSA was assisting in the interpretation. Correct. Okay. And it's during that conversation that the property is disclosed. That is correct. Right. And it's during that conversation also that the $20,000 is also revealed. Correct. Was she asked how much it was worth? How did that? Well, apparently she was, but it was essentially enough to top response in terms of what the value of the property was. So she said $20,000? She said, according to the record, which is the document that was produced after the interview by the SSA, it says, I believe the property is worth $20,000. Okay. Is that $20,000 or is it 20,000 rubles? $20,000. Okay. What was the basis for that? Just her guess? I believe that was her guess. At a minimum, there's nothing in the record that suggests otherwise. Now, we later know that there's a contract, this contract between her husband, where her husband gives her the property as a gift or whatever. Correct. And in that document, it says that the property is worth 23,000 rubles? If I'm not mistaken, the document says $21,000. $21,000. $23,000 rubles, correct. Rubles. Now, rubles is different than dollars. Your Honor, I would have to withhold that. I'm not 100% certain whether it was rubles or the dollars. Well, in the contract, it says, let me see, where was that? It's written out. Oh, yeah. Inventory value of said condominium amounts to 21,368 rubles, which is confined by statement of Belgorod City Bureau of Technical Inventory for Belgorod region from July 10, 1998. Correct. So, it is rubles, Your Honor. So, there it was, rubles. Correct. Did anybody make any attempt to determine what, really, what the property was worth? No, and that's one of the arguments, because the ultimate burden is on the administrative law judge. Now, I have one other. So, she told him it was worth $20,000, right? The record, that's according to the document that was produced after the fact. Right, and they sent her that document. Did they actually send her that document, the summary of her interview? I believe they did, afterwards. Okay, and she's told during the interview that this is all under penalty of perjury. I don't know the answer to that question. Well, in the document, it talks about something under penalty of perjury, correct? And it asks for her to correct the information, if any of it is inaccurate, right? Correct, but it doesn't appear, the record doesn't contain any documents that were sent to her in the Russian language. The only version of this document was in English, and so, presumably, she just didn't understand what the document was. Because she only speaks... She only speaks Russian. She only speaks Russian, so she's got this document, and it was in English. Correct. All right, okay. So, the SSA office now, she says, well, this property is worth $20,000, and that's what ultimately leads us to here. That's correct, Your Honor. Okay. And the quick, just to clarify, the Social Security never asked her about the property in question in any of the prior interviews. Had she been trying to hide something, she would have responded no, and not disclosed the property during the 2012 interview. And therefore, she was later found to have been without fault in not disclosing the document the Social Security essentially admitted. Now, counsel, let me go to a fundamental procedural question. Yes, Your Honor. It's my understanding that the gravamen of your argument is that the ALJ failed to develop the record as to the value of the property. That is correct. That's not the main argument. What's the main argument? The main argument, Your Honor, is that she met the good cause exception for not even trying to sell the property. She, under the regulations, if- Let's do the ALJ and then go to that. Yes, Your Honor. And so, and help me go to that. I have some questions on that too. Absolutely. As far as that argument, what's troubling me is that it had to be raised, that argument had to be raised before the district court. Do you agree with that? Yes, Your Honor. And I can't find where it was. So, if you could help me with that. Well, it's essentially, it is, the argument, one of the arguments in the district court was the fact that there's just not a substantial evidence supporting the administrative law judge's decision. And that's the equivalent of essentially arguing that there's just not enough- There's not substantial evidence in ER 82. She writes, I understand that my resource limit is $2,000 and that if my resources exceed this amount, I will be ineligible. 8-15-12, my husband gave me the apartment 138 about 10 years ago. I believe it is worth about $20,000. No one is living there. My brother watches over the apartment. Isn't that your client's statement? It is a statement that was prepared by the Social Security Administration. And which you thought the client signed, right? The client, she did not sign the statement. It was not interpreted, conveyed to her in the Russian language. That's the statement I was talking about. That's what I was trying to understand. That's the exact point I was trying to understand is that she, it was sent to her, but she never signed it where it said under penalty of perjury, correct? It was sent to her in English. Correct. You were answering Judge Black's questions. Yes, Your Honor. So I think the answer is I can't find where it was specifically raised to the district court. District court, the ALJ failed to develop the record. It was raised, I would take the position that it was raised, it may not have been raised in form, but it was raised in substance. And that there's not substantial evidence in the record to support the conclusion that the property, even after the property is sold, assuming the value of the property was $20,000, we have to consider Mr. Fulken's, her former husband's. So when I look at the, just help me. Yes. When I look at what was before the district court, what will I find that says the ALJ failed to develop? You said I won't find that, but I will find something that should have told the district court that that was an issue. Tell me what specifically that was and where I can find it. That would be the argument that the administrative law decision is not supported, that the property is not supported by substantial evidence. It's that it is in the opening brief with the district court. It doesn't contain the precise language that the administrative law failed to sufficiently develop the record, but it's essentially the argument that there's not sufficient evidence is the equivalent of saying coupled with the administrative law judge's obligation to develop the record. And in fact, according to the circuit, the administrative law judge's duty to develop the record has been heightened in cases where claimants have a history of mental illness, even if the claimant is represented by counsel. I agree with all that. I'm just trying to figure out if the district court was told about it and asked about it. And you've answered that question. Thank you. And so, in essence, I mean, the main argument is essentially that whether or not this property that she left in Russia was it was accountable, was available to her as a resource within the meaning of the Social Security Act. And the precise issue, I believe, is whether despite any ownership interest in the property, the only rational interpretation of the record as a whole, as opposed to isolating specific points of or specific pieces of evidence, is in which record contains evidence of kidnapping, torture, and persecution. Precisely where the property is located is that she had good cause for not even trying to liquidate or do anything, deal with the property in any way. It's in Russia, not in Kyrgyzstan, right? The property is in Russia. That is correct, Your Honor. She kidnapped in Russia? That is correct. She was kidnapped, and she was kidnapped from that property, the record reflects. And that's at ER 54, I'm sorry, ER 53. She was kidnapped from that same property. So she was originally, she grew up in a Christian family in a Muslim country, in Kyrgyzstan. She experienced persecutions because of her religious beliefs in Tajikistan. Then she moved to Kyrgyzstan. She experienced the exact same problems. But Kyrgyzstan and Tajikistan are actually former USSR, so as far as the ALJ was supposed to have been concerned, it's the same as Russia. She then tried to escape to Russia, but in Russia she wasn't welcome because she had been living in a Muslim country. And so they tried to, this is how that property came about. But she was tortured, she was kidnapped from the property, she was tortured there. And the record also reflects that the kidnappers would then follow her and threaten her everywhere. She got status in the United States as a refugee? Correct. So ultimately she fled to the United States as a refugee based on those qualifying events. And those qualifying events took place precisely- What's her status in the United States? She's- She's a citizen. She's a citizen? She became a citizen? She came as a refugee and she was naturalized in 2015. Okay. I let you go over your time, so I'll give you a minute for rebuttal, but let's hear from the government. Thank you, Your Honor. Good morning, Your Honors. Joseph Feinkammer on behalf of the government. I want to start with the question of the condo's worth. Judge Piazzi raised that issue. And as Judge Black pointed out, Ms. Fokina did not raise that issue below. The district court didn't address it. It wasn't in the briefing. And while she did argue that there was a substantial evidence issue, that isn't sufficiently specific to actually challenge the value issue. Under our law, the Ninth Circuit law, you waive claims, not arguments. Correct, but there needs to be- I mean, the Ninth Circuit also- I mean, the key case here, the critical issue in this whole case is whether or not that condominium- whether or not she could sell that condominium or whatever it is. The government calls it a condominium. She calls it an apartment, whatever it might be. Whether she could sell it and get more than $2,000. Correct. American dollars that she could utilize for- to support herself. Correct. I mean, that's the key. That was the critical issue. Correct. The critical issue is whether- And she argued that there wasn't substantial evidence to support that. That was a fundamental argument. And whether, you know, just how do you value that apartment? And that- That's a precise argument, but it's not a claim. And the claim is that it was not supported by substantial evidence. And that is not sufficiently specific. In fact, I believe in- the district court didn't address this point. And I believe that the district- I believe that in the briefing below, she assumed for purposes of argument that it was- I would have to go back and double check that. But she didn't raise the issue. But let me address Your Honor's question about that inventory value portion of the contract. As Judge Bea pointed out, she did allege and she averred that- Let me answer this question. Yes. Was she counseled at this hearing? Did she have counsel? I don't know the answer to that question. During the redetermination portion? She had counsel before the district court. She did. And she- I believe she also had a representative- At the hearing. At the hearing. But not on the redetermination. That was just a phone call with her. That was a phone call. I don't know. I don't know if the record actually indicates who was present on the phone call with her at that time. But it was interpreted. And it was during that phone call that she said that the condo, in her belief, was worth $20,000. My next question. If she had counseled this document, ER-82, was that presented at the hearing? Was it presented at the hearing? It was- I believe it was an exhibit within this record. So- That's the redetermination? Yeah. Correct. Correct. So she had counsel. The document came into evidence. And it says what it says. Correct. And under the- Is there any objection on the grounds that it cannot come into evidence because she doesn't speak English? It hasn't been translated. She doesn't know what it said? There was no objection on that basis. And the- and I would also point out the POMS, that's the internal agency guidance on this issue. The- Ms. Joaquina cites a POMS provision in her brief. And that provision actually says that- and this kind of gives instructions to field offices about how to take in these claims. It says that the agency will accept a claimant's allegations about her property's value when, number one, countable resources exceed the limit, which in this case it does. And number two, claimant doesn't allege any debts on the property. And she hasn't alleged any encumbrances or debts on the property. Was this contract of gift before the ALJ? Yes. And if anybody were to read it, it says that this, you know, it's worth- inventory value is 21,308 rubles. How much is that worth in American dollars? I think it's- I think I looked this up at some point. I think it's less- I'm sure you did. And I think it's less than $2,000. It's way less than $2,000. But I think the point is it says inventory value. It doesn't say fair market. Did anybody think of asking her, can you clarify what the- is your $20,000 valuation, is that American dollars today? And how does it differ from the $23,000 or the $21,000 in rubles? I mean, is there a big inflation? I mean, what's going on in this little town in Russia where this condo is? I mean, we have- property values here in America are, you know, skyrocketing in certain cities, Seattle, San Francisco, Los Angeles. I mean, is there- is the market in wherever this little place is, Belgrade, is the housing market there, you know, just exploding that this property is now worth $20,000? Well- As opposed to about $350,000? Two points. Number one, it does say inventory value, which I think is a fair- to fair reading of that is what is the inventory in the apartment? But beyond that, Your Honor makes a good point. And Ms. Fokino was represented during the hearing, and there was never a dispute over her original averament to the Social Security Administration. But the hearing, she was not represented by counsel, though. She was represented, I believe, by a representative. I believe it was Mr. Davidovsky, and I don't think he was barred at the time, but he's, you know, he's now an attorney. So she was represented at the hearing, and this point was never developed by counsel. He had the opportunity, or the representative had the opportunity to question his client about this, and there was never any question, as Judge Bea pointed out, there's never really been any question until right now in front of the Ninth Circuit that this property exceeds, it's a condominium, that this condominium exceeds $2,000. How does one sell property in Russia? I don't know, Your Honor. Did anybody ask? I don't think that was asked at the hearing. Her, at the hearing, she testified that she, and this gets to. Does the government have any control over whether this stuff is sold and whatnot? I mean, is it a free market? There's no evidence of that in the record. I just, I don't, I don't. Do real estate agents or real estate agents involved in the sale of property in Russia? Again, that was, that was. Did anybody ask? That was not asked. Ms. Fokina didn't ask that. Well, Ms. Fokina wasn't asked those questions at the hearing. And, and to this day, I mean, that, that, this point though, Judge Pius underscores the problem with Ms. Fokina's argument on this point, which is that her, her argument about good cause is that she can't return to Russia in order to effectuate, take reasonable steps to sell this property. And there's no question that, to be clear, there's no question Ms. Fokina experienced some, some tragic events and, and the ALJ credited that, you know, she, she underwent some serious issues. A crime was committed against her in Russia. She got asylum, I believe, from Tajikistan eventually. So there's no question about that. But, but the point is, Judge Pius, is that, is that there is, she has not submitted any authority that shows she actually has to be physically present in Russia to do this. Or that she has contacted a real estate agent in Russia. Or that she's contacted a real estate attorney here. Anything to that effect. And she had, she had over a year between the time that the redetermination happened and between the time that the ALJ held a hearing on this. And these, these arguments were not raised during the hearing. Judge Black earlier on mentioned the gravamen of counsel's argument was that the ALJ had a duty to develop the record here and failed in that regard. What is the ALJ's duty in this context? The ALJ's duty to develop the record, the ALJ has a duty to develop the record if the, if the record is ambiguous. Or if the record is insufficient for the ALJ to make a decision. The ALJ didn't make any of those findings here that it was ambiguous or insufficient. What, what the point is, it's not a lack of clarity. It's a lack of proof. And at this point, Ms. Fokina has not come forward with, with proof to substantiate these reasons, these arguments that she's making now on appeal as to why she can't take at least reasonable steps to liquidate this property. And the reasonable steps involve, under the good cause standard, the reasonable steps involve, you know, at least reaching out to a real estate agent or trying to sell it on her own. That assumes that really there's a real estate, a private real estate market in, in, what's the name of this place? Belgorod? Belgorod. But at the end, at the end, at the end of the day, there's. Maybe there is a booming real estate market in Belgorod. Well, and at the end of the day, they're just, they're, she, she just has not come forward with proof. And the burden is on her to, to prove eligibility in this case. Okay. Um, if the panel doesn't have any more questions, I would ask the court to affirm the ALJ's decision in this case. I don't, I don't see any other questions. Thank you. Thank you. Your Honors, I'd like to start with the, uh, with the latest issue of whether, who has the duty to develop the record. In Winston, which is a district, it's a district court case from, from the circuit. But the lack of proof regarding expenses associated with the sale was actually attributed to the, to the ALJ. I mean, that's, I mean, that's not precedent, but it was the court applying the correct standard in terms of who has the proof to develop the record. It was the ALJ that took upon itself the responsibility to, to, to, to terminate someone's, someone's benefits. And yet all they have between, before them is the value of the property. And that wasn't sufficient to say after you sell it. There's not going to be, you'll still be over this. Where's the ambiguity in the record as to whether there were any costs to sell the property? So the only credible evidence in the record is Ms. Fokina's testimony that she would need to be present in Russia in order to be able to sell the property. Does the ALJ have to believe that? Well, the ALJ doesn't have to believe that, but the ALJ did not make any negative credibility findings. And in fact, as to certain portions of her... Counsel, isn't that a legal conclusion? Right. You may be sincere, but, but, but wrong. That is a possibility, but that's... It's not like she's saying I, I hurt. It's not subjective. It's a legal conclusion. But even if she's wrong, the, the fundamental argument is that because of all, all of her experiences, she was essentially precluded for not, from not even thinking about the I mean, we're talking about the property where the kidnapping occurred. I mean, some, it's not, it's not on a certain level. I take issue with the government's argument that, well, it was her choice to not sell the property, but that's the equivalent of, you know, the, the, it's essentially how, how men, you know, lately justify or take issue with the Me Too argument saying, well, it's the women's, the women's fault that they get sexually assaulted. I mean, it's... A family member is living in the property right now and, and is related to her as I understand it. As I understand it, Your Honor, that's not, that's not accurate. A family member, we're dealing with the record that was developed in 2012. So somebody may have been at the property at that time, but things have changed and she hasn't been back. At that time, a family member was, was living. I think it was her brother. I can't remember. The only evidence of that is, again, the document that she was never provided. I'm not, I'm not sure that's material that really makes, makes any difference. But that's, that's what the record, based on the document that was prepared by the administration, yes. Now with regard to the 2000, the government conceded that the property was worth less than $2,000 in U.S. dollars, but the record also contains evidence that Ms. Foking was entitled to half of that property, half of that interest because he was, after the divorce, it's a Russia, it's a community property state. All right, you're over, I'll let you go, 52, 53 seconds over the additional minute that I gave you. So I need to cut you off. Thank you, Your Honor. For that, we ask that the court reverse the district court decision. Okay. Thank you, counsel. We, we appreciate your arguments this morning and the matters submitted.
judges: Paez, Bea, Black